UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GREGORY DEANGELIS,

    Plaintiff,

v.                                                            Case No. 16-cv-1482-Orl-37TBS

STRAYER ELECTRIC, LLC,

    Defendant.
_____

**ORDER**

This cause is before the Court on consideration of the following: (1) Defendant's Motion for Partial Summary Judgment and Incorporated Memorandum of Law (Doc. 29), filed May 1, 2017; (2) Response in Opposition to Defendant's Motion for Partial Summary Judgment and Incorporated Memorandum of Law (Doc. 35), filed May 31, 2017; (3) Defendant's Reply to Plaintiff's Response in Opposition to Defendant's Motion for Partial Summary Judgment and Incorporated Memorandum of Law (Doc. 39), filed June 14, 2017; (4) Plaintiff's Motion for Summary Judgment (Doc. 30), filed May 1, 2017; (5) Defendant's Amended Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 37), filed June 8, 2017; Plaintiff's Reply to Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment (Doc. 41), filed June 22, 2017; Defendant's Motion to Strike Affidavit in Support to Plaintiff[']s Motion for Summary Judgment and Incorporated Memorandum (Doc. 36), filed June 2, 2017; and Response in Opposition to Defendant's

Motion to Strike Affidavit in Support of Plaintiff's Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 40), filed June 16, 2017.

**BACKGROUND**

**I.     The Parties**

Plaintiff Gregory Deangelis ("**Plaintiff**") is the owner and managing member of Fort Knight, LLC ("**Fort Knight**")—a company that provides turnkey renovation construction services to the hotel and hospitality industry. (Doc. 6, ¶ 6.) In developing, negotiating and contracting for new renovation construction projects, Fort Knight solicits various contractors and subcontractors to perform the requisite scope of work for each project. (*Id.* ¶ 7.) Defendant Strayer Electric, LLC ("**Defendant**") is a commercial and residential electrical contractor that provides electrical contracting services in the commercial hotel and hospitality industry. (*Id.* ¶ 8.) The owner and sole member of Defendant is Ronald J. Strayer ("**Strayer**"). (*Id.* ¶¶ 3, 14.)

**II.    The Contracts**

    **A.     The Employment Contract**

On September 24, 2014, Plaintiff entered into a one-year employment contract with Defendant. (Doc. 30-1, p. 3 (the "**Employment Contract**").) According to the Employment Contract, Defendant offered, and Plaintiff accepted, a position as the Vice President of Business Development ("**VPBD**"). (*Id.*) As Defendant's VPBD, Plaintiff was required to "develop[] [n]ational relationships with [n]ational [g]eneral [c]ontractors for [h]otel [r]emodeling" through means of email, phone calls, and travel. (*Id.*) Plaintiff's objective was to "obtain true tangible RFQ [and] RQP, and [to] assist in negotiating the sale of

jobs." (*Id.*) In exchange, Defendant agreed to pay Plaintiff an annual salary of $104,000.00 ("**Salary**"), plus three forms of "**Bonus Compensation**": (1) the value of the rate saved on electrical contracts negotiated to sell to other contractors; (2) one and one-half percent of the contract value at payment of retention for work brought to Defendant; and (3) one percent of all other Defendant hotel contracts at payment of retention. (*Id.*)

B.  **The Fort Knight Operating and Distribution Agreements**

Strayer and Plaintiff subsequently entered into a Fort Knight Operating Agreement ("**FK Agreement**") whereby: (1) Strayer became a member of Fort Knight, and (2) each member, Plaintiff and Strayer, shared equally in any net profits ("**Net Profits**") and losses from Fort Knight projects. (*See* Doc. 6-3, pp. 1–3.) Thereafter, Defendant and Fort Knight made an oral distribution agreement ("**Distribution Agreement**") that Defendant would act as a conduit and receive funds for the Fort Knight projects until such time that those funds were disbursed to Fort Knight. (Doc. 29-2 ¶ 13; Doc. 30-3, p. 20.) Fort Knight would then disburse the funds to Plaintiff and Strayer in accordance with the FK Agreement. (*Id.*)

III. **The Alleged Breach**

Plaintiff performed services under the Employment Contract until May 2016. (Doc. 29-1, ¶ 3.) That same month, Strayer resigned as a member of Fort Knight. (*Id.* ¶ 5.) Though Plaintiff was paid a portion of his annual salary and Bonus Compensation, Defendant allegedly refused to pay him the remaining amount due under the Employment Contract. (Doc. 31, ¶¶ 6, 12.) Defendant also purportedly failed to remit Plaintiff his fifty percent share of Net Profits earned under the FK Agreement. (*Id.* ¶ 22.)

As a result, Plaintiff's counsel, Aaron Thalwitzer, sent Defendant a letter demanding that it pay Plaintiff $100,578.00 in Net Profits, $44,000 in Salary, and $131,702.00 in Bonus Compensation. (*See* Doc. 34-2, pp. 6–7 ("**Demand Letter**").) Upon receipt, Defendant's pre-suit counsel, Thomas Moring ("**Moring**"), conducted a preliminary investigation into Plaintiff's claims before sending a letter rejecting his demand. (*See id.* at 9–10 ("**Response Letter**").)

## IV. This Action

Dissatisfied with Defendant's response to his Demand Letter, Plaintiff filed suit against Defendant on August 18, 2016. (Doc. 1.) In Count I of the Amended Complaint, Plaintiff asserts a breach of contract claim for Defendant's alleged failure to fulfill its obligations under the Employment Contract. (*See* Doc. 6, ¶¶ 23–34.) In Count II, Plaintiff asserts a claim for unjust enrichment for Defendant's wrongful retention of benefits Plaintiff conferred upon it under the Employment Contract and FK Agreement. (*See id.* ¶¶ 35–42.) Finally, in Count III, Plaintiff seeks to impose a constructive trust upon Defendant for Net Profits due and owing to him under the FK Agreement. (*See id.* ¶¶ 43–49.) Defendant answered the Amended Complaint and asserted several affirmative defenses. (Doc. 10.)

In May 2017, Plaintiff filed a motion for summary judgment as to all claims in the Complaint as well as Defendant's affirmative defenses. (*See* Doc. 30 ("**SJ Motion**").) As support, Plaintiff submitted multiple exhibits, including an affidavit. (*See* Doc. 31 ("**Plaintiff's Affidavit**").) That same day, Defendant moved for partial summary judgment with respect to Counts II and III (Doc. 29 ("**PSJ Motion**")), and subsequently

moved to strike portions of Plaintiff's Affidavit (Doc. 36 ("**Strike Motion**")). The parties filed responses to each other's motions (Docs. 35, 37, 40) and replies in support of their respective summary judgment motions (Docs. 39, 41). By stipulation with Defendant, Plaintiff voluntarily dismissed Count II. (Doc. 38.) The parties' disputes concerning Counts I and III and the Strike Motion are fully briefed and are ripe for adjudication.

## STRIKE MOTION

### I. Plaintiff's Affidavit

Plaintiff's Affidavit references statements made in two documents prepared by Defendant: the Response Letter and an accounting worksheet (the "**Worksheet**") (*see* Doc. 6-2). In particular, Plaintiff avers that:

> 7. . . . [Defendant] admitted to owing [Plaintiff] at least $103,123.07 ($69,577.50 in Net Profits pursuant to the [FK] Agreement "Net Profits agreement" and $33,545.57 in commissions).
>
> 8. [Defendant] also admitted that additional distributions were due to [Plaintiff] upon close out of various projects (and in which payments were received by Strayer).
>
> \* \* \*
>
> 15. Alternatively, based on [Defendant]'s own calculations prior to litigation, [Defendant] owes [Plaintiff] $28,514.70 as Bonus Compensation. See [the Worksheet] to Plaintiff's Motion for Summary Judgment.
>
> \* \* \*
>
> 21. In a letter dated July 1, 2016 sent to my counsel . . . [Defendant] admitted to owing [Plaintiff] at least $69,577.50 in Net Profit pursuant to the [FK]

>           Agreement.

* * *

>    24.   [Defendant] admits that [Plaintiff is] owed at least $69,577.50 for services rendered by [Plaintiff] to [Defendant].

(Doc. 31.)

In its Strike Motion, Defendant argues that the Court should strike Plaintiff's averments in paragraphs 7, 8, 15, 21, and 24 ("**Averments**") because they are: (1) hearsay; (2) not based on personal knowledge; (3) conclusory and unsupported by any competent testimony or admissible evidence; and (4) statements related to settlement efforts, which are inadmissible under Federal Rule of Evidence 408 ("**Rule 408 Argument**"). (Doc. 36, p. 4.) The Court is unpersuaded by most of Defendant's arguments, but finds that the Rule 408 Argument deserves extended discussion.

## II.    Legal Standards

Under Rule 408, evidence of "(1) furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim; and (2) conduct or a statement made during compromise negotiations about the claim . . ." is not admissible to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction. The primary purpose of Rule 408 is to promote the public policy favoring the compromise and settlement of disputes. Fed. R. Evid. 408, advisory committee's note on 1972 proposed rules.

The U.S. Court of Appeals for the Eleventh Circuit has held that the test for

admissibility under Rule 408 is whether the communications or conduct at issue was intended to "be a part of the negotiations toward compromise.'" *Blu–J, Inc. v. Kemper C.P.A. Grp.*, 916 F.2d 637, 642 (11th Cir.1990) (quoting *Ramada Dev. Co. v. Rauch*, 644 F.2d 1097, 1107 (5th Cir. 1981)). In applying this test, the court "must look at the totality of the circumstances, carefully reviewing the contents of the letter and the timing of its delivery." *See Raybestos Prods. Co. v. Younger*, 54 F.3d 1234, 1241 (7th Cir. 1995). With these principles in mind, the Court analyzes whether the Response Letter and the Worksheet falls within the purview of Rule 408.

### III. Analysis

In its Strike Motion, Stayer Electric argues that the Response Letter is inadmissible under Rule 408 because it contains statements made during compromise negotiations. (Doc. 36, pp. 2–4.) Plaintiff counters that the Response Letter was merely "a description of the status quo at the time" and not intended for purposes of compromise. (Doc. 40, pp. 4 - 6.) Upon examination of the record, the Court agrees with Defendant.

In Plaintiff's Affidavit, Moring, unequivocally states that he intended for the Response Letter to be "part of a larger settlement discussion that was ongoing." (Doc. 34-2, ¶¶ 12, 14.) Though Moring's characterization of the parties' discussions is not dispositive, it is consistent with the tone of the letters exchanged between both parties. In fact, record evidence reveals that Plaintiff initiated compromise negotiations in the Demand Letter, which states, in pertinent part:

> [Y]ou are hereby notified that [Defendant] is indebted to . . . [Plaintiff] in the total amount of $232,280.00. In the interest of settlement, and to avoid needless escalation, [Fort Knight] has

> authorized me to waive interest, costs of collection, and attorney's fees and accept payment in this amount so long as an accord is reached on or before June 25, 2016.

(Doc. 34-2, pp. 6–7.)

In rejecting Plaintiff's offer, Moring sent Thalwitzer the Response Letter outlining Defendant's position with respect to each of Plaintiff's claims. (Doc. 34-2, pp. 9–10.) Particularly, Moring stated that he believed that Defendant owed Plaintiff: (1) no unpaid salary; (2) $69,577.50 in net profits; and (3) approximately $33,545.57 in Bonus Compensation. (*Id.*). Moring then concluded by requesting that Thalwitzer "discuss the matter with Plaintiff and let [him] know how [they] would like to proceed." (*Id.* at 10.)

Though Moring did not accept Plaintiff's offer, or make a formal counteroffer, the Court concludes that the Response Letter contains precisely the type of communication that Rule 408 seeks to encourage parties to engage in with the knowledge that the other side cannot use it against them in court. As such, the Response Letter is properly excluded under Rule 408. *See Polk v. BP Amoco Chem. Co.*, 586 F. Supp. 2d 619, 621–22 (D.S.C. 2008) (concluding that a letter from the defendant outlining the defendant's position was covered by Rule 408, even though the plaintiff never made any settlement offer of his own and never expressed any willingness to settle for less than the full amount of his claim).

Unlike the Response Letter, the Court is unable to determine whether the Worksheet is subject to exclusion under Rule 408. Defendant proffers no evidence demonstrating that the Worksheet was intended to be part of the negotiations toward

compromise, and this information not readily apparent from the record. For the foregoing reasons, the Court concludes that Defendant's Strike Motion is due to be granted with respect to Averments originating from the Response Letter, but denied with respect to Averments derived from the Worksheet.

**SUMMARY JUDGMENT MOTIONS**

**I.     Legal Standards**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that [he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). As to issues for which he would bear the burden of proof at trial, the "movant must affirmatively show the absence of a genuine issue of material fact, and support [his] motion with credible evidence demonstrating that no reasonable jury could find for the non-moving party on all of the essential elements of [his] case." *Landolfi v. City of Melbourne, Fla.*, 515 F. App'x 832, 834 (11th Cir. 2012) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)). As to issues for which the non-movant would bear the burden of proof at trial, the movant has two options: (1) the movant may simply point out an absence of evidence to support the non-moving party's case; or (2) the movant may provide "affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial." *U.S. v. Four Parcels of Real Prop. in Green & Tuscaloosa Ctys. in State of Ala.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (citing *Celotex Corp.*, 477 U.S. at 325).

"The burden then shifts to the non-moving party, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact

exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–17 (11th Cir. 1993)). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, a court must not grant summary judgment. *See Celotex*, 477 U.S. at 323. "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Four Parcels*, 941 F.2d at 1437 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248) (1986)).

The Court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the non-movant. *Battle v. Bd. of Regents for Ga.*, 468 F.3d 755, 759 (11th Cir. 2006). However, "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

## II.  Analysis

### A.  Count I

Plaintiff seeks summary judgment with respect to Count I, which relates only to the Employment Contract. (Doc. 6, ¶¶ 23–34.) Plaintiff argues that he is entitled to summary judgment because record evidence establishes that Defendant breached the Employment Contract by: (1) failing to pay him an annual salary of $104,000.00 for the second year of his employment; and (2) failing to pay him Bonus Compensation. (Doc. 30, ¶¶ 9–19; Doc. 6, ¶¶ 23–34.) Defendant opposes this argument and contends that it owes Plaintiff no salary or Bonus Compensation beyond what it has already paid him.

(Doc. 34, pp. 12–16.)

### 1. Salary

Though unclear, Plaintiff appears to first argue that the parties extended the Employment Contract by continuing to work together long after its expiration. (Doc. 30, ¶¶ 13, 14.) Plaintiff therefore contends that Defendant was obligated to pay him a base salary of $104,000.00 for the second year of his employment and that $44,000.00 remains unpaid. (*Id.* ¶¶ 9, 13.) As support for his position, Plaintiff claims that Defendant admitted that the Employment Contract continued on a month-to-month basis and could be terminated by either party. (*Id.* ¶ 13.) "By illustration, Defendant admits that [it] would still owe Plaintiff his salary of $104,000.00 for the entire year." (*Id.*) Neither the law nor the record support Plaintiff's argument.

Generally, "[w]hen an employment contract for a definite period exists and an employee continues to work under the contract after its expiration, the presumption in the law is that the contract is renewed and employment continued on the terms of the original contract." *Barraza v. Pardo*, 985 F. Supp. 2d 1369, 1372 (S.D. Fla. 2013) (citations omitted). Such a presumption, however, "may be rebutted by evidence showing a change of the terms of the contract or by proof of facts and circumstances showing that the parties understood that the terms of the old contract were not to apply to the continued service." *Id.*

Here, although the parties continued to work together, Defendant points to ample unrefuted evidence rebutting the presumption that Defendant intended to be bound by the Employment Contract after it expired—especially, the provisions guaranteeing

Plaintiff one-year employment and a salary of $104,000.00. For starters, there is no evidence that Defendant admitted to owing Plaintiff a salary of $104,000 for the second year. To the contrary, Strayer testified that Defendant only agreed to pay Plaintiff a salary of $104,000.00 during the term of the Employment Contract, which began on September 24, 2014, and expired on September 24, 2015. (Doc. 30-3, pp. 9–11.) Upon the expiration of the Employment Contract, Strayer asserts that the parties continued to carry out the same duties, but only on a month-to-month basis. (*Id.* at 5.) Thus, Stayer's testimony alone is sufficient to rebut the presumption that the parties extended the Employment Contract and Plaintiff's contention that he is entitled to $44,000.00.

The Employment Contract itself provides the strongest rebuttal evidence in that it only guaranteed Plaintiff employment for one year commencing on September 24, 2014. As Defendant correctly points out, the Employment Contract included an "**Extension Clause**" which required a "2nd Year Contract . . . to be determined [sixty] [d]ays from date of [the Employment] [C]ontract." (Doc. 30-1, p. 3.) Strayer testified that the parties never came to any agreement about extending the Employment Contract any time within the sixty-day period from September 24, 2014 (Doc. 30-3, pp. 5, 9–10), and Plaintiff "does not deny this fact" (Doc. 41, p. 4). Instead, Plaintiff argues the Extension Clause is ambiguous and that the parties conduct demonstrates that they meant "within [sixty] days of the e*nd date* of the [Employment Contract]," not the beginning. As support, Plaintiff urges the Court to look to the parties' post-contract conduct. The Court rejects Plaintiff's argument.

Plaintiff's ability to *post facto* construct an alternative meaning for the Extension

Clause does not mean that it is ambiguous as written. *Dirico v. Redland Estates, Inc.*, 154 So. 3d 355, 357 (Fla. 3rd DCA 2014) (explaining that a true ambiguity does not exist merely because a contract can possibly be interpreted in more than one manner). By its terms, the Extension Clause unambiguously required the parties to agree to a second-year contract sixty days from the "date of," not the "end" of the Employment Contract. Thus, an adoption of Plaintiff's interpretation would require the Court to add terms to the plain language of the Extension Clause and/or look to the parties' post-contract behavior, which the Court is not at liberty to do.

It is the Court's duty to enforce the contract as plainly written. *Expositions, Inc. v. City of Miami Beach*, 274 So. 2d 29, 30–31 (Fla. 3d DCA 1973) (explaining that courts may not rewrite, alter, or add to the terms of a written agreement between the parties); *Lee v. Montgomery*, 624 So. 2d 850, 851 (Fla. 1st DCA 1993) (explaining that "in the absence of some ambiguity, the intent of the parties to a written contract must be ascertained from the words used in the contract, without resort to extrinsic evidence"). Enforcing the Extension Clause as plainly written, the Court concludes that the parties were required to agree to a 2nd Year Contract within sixty days of the execution of the Employment Contact.[1] The Court further concludes that questions of fact still remain as to whether the parties intended to be bound by every term of the Employment Contract when they continued to work together after its expiration. Accordingly, Plaintiff's motion for

---

[1] The Court notes that even if it were to accept Plaintiff's interpretation of the Extension Clause, his claim would still fail at the summary judgment stage, as he has proffered no evidence demonstrating that the parties agreed to a 2nd year contract during the last 60 days of the Employment Contract.

summary judgment with respect to his claim for $44,000.00 is due to be denied.

Closely related to Plaintiff's first argument, is his contention that he and Defendant waived the Extension Clause by continuing to operate under certain terms of the Employment Contract after the initial year and "[a]s a result, the [Employment Contract] . . . was extended in its entirety, including the one-year guaranteed employment provision." (Doc. 41, p. 5.)

A "[w]aiver is the intentional or voluntary relinquishment of a known right, or conduct which warrants an inference of the relinquishment of a known right." *Bd. of Cnty. Comm'rs v. Int'l Union of Operating Eng'rs, Local 653*, 620 So. 2d 1062, 1065 (Fla. 1st DCA 1993); *Leonardo v. State Farm Fire & Cas. Co.*, 675 So. 2d 176, 179 (Fla. 4th DCA 1996). Whether a waiver has occurred in any given situation is generally a question of fact. *Southeast Grove Mgmt, Inc. v. McKiness*, 578 So. 2d 883, 886 (Fla. 1st DCA 1991). Here, Plaintiff fails to develop his single-paragraph argument, and cites no authority or evidence to support his position. (*See* Doc. 41, p. 5.) Therefore, under the circumstances of this case, the Court cannot hold, as a matter of law, that Defendant waived the Extension Clause.

In the alternative to Plaintiff's claim that Defendant owes him $44,000.00 "for the remainder of the second year of the Employment Contract, he asserts that he is entitled to a minimum of $1,714.29 for his final six days of the monthly period through May 24, 2017. (*See* Doc. 30, ¶ 14.) Notably, however, there is no record evidence that Defendant failed to pay Plaintiff for the final six days of his employment. While the Plaintiff attempts to support his claim by citing to a portion of the record, the Court is

unable to locate the referenced exhibit from the pin citation provided. (*See id*.) Accordingly, Plaintiff's motion for summary judgment with respect to his claim for $1,714.29 is also due to be denied.

### 2. Bonus Compensation

In addition to his claim for unpaid salary, Plaintiff claims that he is owed: (1) $33,545.57 in Bonus Compensation based on Defendant's own "admission" in the Response Letter, or (2) $54,515.49 based on his own calculations. (Doc. 30 ¶¶ 8, 16, 18.) Alternatively, Plaintiff claims that he is entitled to a minimum of $28,514.70 in Bonus Compensation as set out in the Worksheet. (*Id.* ¶ 12.) Plaintiff does not, however, present any admissible evidence showing that Defendant owes Plaintiff either $33,545.57, or $54,515.49 in Bonus Compensation. Moreover, Strayer directly rebuts Plaintiff's contention that he is entitled to $28,514.70. (*See* Doc. 34-1, ¶¶ 11–18.) In fact, Strayer asserts that Plaintiff is not entitled to any Bonus Compensation whatsoever because he was substantially overpaid in the amount of $19,486.30. (*Id.*) In light of this conflicting evidence, the Court finds that questions of material fact remain as to how much how much, if any Bonus Compensation Plaintiff is entitled to receive. Accordingly, Plaintiff's motion will be denied with respect to this issue.

### B. Count III

Both parties seek summary judgment with respect to Count III, which asserts a "constructive trust" claim against Defendant for the Net Profits allegedly due and owing to Plaintiff under the FK Agreement. (*See* Doc. 6, ¶¶ 43–49.) As Defendant correctly observes, Count III fails as a matter of law because a "constructive trust is not a traditional

cause of action"—rather, it is "an equitable remedy that must be based upon an established cause of action." *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008) (citing *Collinson v. Miller*, 903 So. 2d 221, 228 (Fla. 2d DCA 2005)).

Here, Plaintiff has not pled an "established cause of action" for which the Court could impose a constructive trust for the Net Profits allegedly owed to Plaintiff under the FK Agreement. The Plaintiff does not assert an express breach of contract claim concerning the FK Agreement. Further, because Plaintiff is an intended beneficiary of the FK Agreement, he cannot assert an equitable cause of action for amounts owed under the contract. *See id.*; *Rushing v. Wells Fargo Bank, N.A.*, 752 F.Supp.2d 1254, 1265 (M.D. Fla. 2010); *Berry v. Budget Rent A Car Sys., Inc.*, 497 F.Supp.2d 1361, 1369 (S.D. Fla. 2007) (holding that a quasi-contractual claim of unjust enrichment fails upon a showing that an express contract exists). In fact, Plaintiff voluntarily dismissed his claim for unjust enrichment while the instant motions were still pending. (Doc. 38). Thus, with respect to Count III, the SJ Motion is due to be denied, and the PSJ Motion is due to be granted.

C. **Defendant's Affirmative Defenses**

Finally, Plaintiff seeks summary judgment on Defendant's seven affirmative defenses. (*See* Doc. 10, pp. 4–6; *see also* Doc. 30, pp. 10–14.) Upon review, the Court notes that Defendant's third and fourth affirmative defenses relate solely to Counts II and III, which are no longer viable claims. Thus, Plaintiff's SJ Motion is due to be denied as moot with respect to those defenses. However, the SJ Motion is due to be granted with respect to Defendant's remaining affirmative defenses because the Court finds, and Defendant

admits, that they have "not materialized factually." (*See* Doc. 30-2, p. 1.)

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Strike Affidavit in Support to Plaintiff[']s Motion for Summary Judgment and Incorporated Memorandum (Doc. 36) is **GRANTED IN PART** and **DENIED IN PART**.

2. Paragraphs 7, 8, 21, and 24 of Plaintiff's Affidavit are **STRICKEN**.

3. Defendant's Motion for Partial Summary Judgment and Incorporated Memorandum of Law (Doc. 29) is **GRANTED IN PART** and **DENIED IN PART.** The motion is denied as moot with respect to Count II and granted with respect to Count III.

4. Summary judgment is entered in favor of Defendant with respect to Count III, and Count III is **DISMISSED**.

5. Plaintiff's Motion for Summary Judgment (Doc. 30) is **GRANTED IN PART and DENIED IN PART**. The motion is granted to the extent that Plaintiff seeks summary judgment on Defendant's **first, second, fifth, sixth, and seventh affirmative defenses. The motion is denied in all other respects.**

**DONE AND ORDERED** in Chambers in Orlando, Florida, on August 22, 2017.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record